FILED

JUN 28 2022

LESLIE MASON

CIRCUIT CLERK

## IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY

PATRICK WASHINGTON                                                    PLAINTIFF

VS.                                   CASE NO. 47OCV-22-56(TA)

TYLER STANDEFER AND
JERRY HAMILTON, Individually,
and in their official capacity                                       DEFENDANTS

### COMPLAINT

Comes the Plaintiff, PATRICK WASHINGTON, by and through counsel, SUTTER & GILLHAM, P.L.L.C., and, for this Complaint, he states:

### PARTIES & JURISDICTION

1. Plaintiff Patrick Washington is a black resident and citizen of Osceola, Arkansas, who brings this action for violation of his constitutional rights as allowed 42 USC 1983 and the ACRA, as well as for violation of the AWPA. TYLER STANDEFER and JERRY HAMILTON were each employed by the City of Osceola as a police officer at all times relevant, and each is sued in his official and individual capacity. This Court has subject matter jurisdiction, and venue is proper, since the events occurred in this County. Plaintiff also brings claims under the FLSA, the AMWA, the Arkansas Civil Rights Act of 1993 and the Arkansas Whistleblower Protection Act. Since the acts giving rise to this action arose in Mississippi County, Arkansas. All actions were taken under color of law.

### GENERAL ALLEGATIONS OF FACTS

2. Approximately 2 1/2 years ago, Plaintiff, a black male, conducted a traffic stop on a female by the name of Kandra Denkins.

Page 1

## Exhibit A

3.      The traffic stop was due to a tip I had just received (from a C.I.) about a possible drug deal that was taking place on the East Side of town.

4.      The individual gave Plaintiff a description of the vehicle. Moments later, Plaintiff arrived at the location and observed a vehicle matching the description traveling at a high rate of speed and appeared to avoiding Plaintiff.

5.      Plaintiff proceeded to cut the vehicle off at a 4-way intersection and observed the vehicle almost running the 4-way stop sign before coming to an abrupt stop.

6.      Plaintiff flashed his lights for the vehicle to go first, and as the vehicle proceeded, Plaintiff noticed that one of the tag lights were out, so he initiated the traffic stop based on that probable cause.

7.      Upon approaching the driver of the vehicle, Plaintiff observed that it was Kandra Denkins, a female whom he had had a previous relationship with several months prior.

8.      Neither the driver, nor the passenger, was wearing a seat belt so after checking both individuals for warrants Plaintiff issued traffic citations for no seat belt to both individuals.

9.      The next day the female came to the Police Department and filled out a Complaint Form against Plaintiff stating that Plaintiff pulled her over because she was dating someone else, and Plaintiff was jealous of her.

10.     Plaintiff's supervisor at the time, Tyler Standefer, followed up on the complaint and initiated an IA investigation upon the Plaintiff.

11.     The IA investigator at the time, Joseph White, interviewed Plaintiff, as well the victim. Mr. White also watched video footage of the traffic stop, and he concluded that Plaintiff did not break any policies at all, and that Plaintiff did nothing wrong, So, he cleared Plaintiff of all charges.

Page 2

**Exhibit A**

12.    But Tyler Standefer wanted to write Plaintiff up on something because he had it in for Plaintiff. At the time, Plaintiff had been employed for the City of Osceola for 2 1/2 years and had never had a disciplinary and was the top (most proactive) Officer within the Department.

13.    Tyler Standefer had ill feelings towards Plaintiff because Plaintiff had complained Standefer was creating a hostile work environment in violation of City policy.

14.    Although Plaintiff was cleared by IA on the complaint from Kandra Denkins, Tyler Standefer still wrote Plaintiff up for speeding.  He advised Plaintiff was traveling around 15 miles over the speed limit and was not running code.

15.    At this time, Plaintiff expressed how the only way he could validate writing Plaintiff up for speeding is if he went back and wrote all of his patrol offers up for speeding as well without running code.  His exact words were, "how do you know I haven't?" Plaintiff replied, "Because I know you, and you are a big liar."

16.    Two (2) weeks later, Plaintiff transferred to CID, so Standefer was no longer Plaintiff's supervisor.  Thus, Plaintiff no longer had to take orders from Standefer, so Plaintiff questioned him and challenged him on a lot of things that he did wrong.

17.    Tyler Standefer does not like his authority being questioned, especially in front of an audience.

18.    The IA investigator later told Plaintiff (after he went to another Department) that Tyler wanted to suspend Plaintiff without pay and even terminate Plaintiff for the traffic stop with Kandra Denkins months prior.

19.    Before Plaintiff's termination, Tyler Standefer was promoted to Assistant Chief, so Plaintiff had to answer to him again.  After Tyler Standefer had been Assistant Chief about a week, he advised then Captain Jerry Hamilton to write Plaintiff up for being tardy even though Plaintiff's tardiness had been already preapproved by Plaintiff's Supervisor, Jerry Hamilton.  Whenever

**Exhibit A**

Plaintiff was late those few minutes, Plaintiff always stayed over because that's the agreement Plaintiff's Supervisor and Plaintiff at the time had made.

20.     So, Plaintiff complained about working without being paid in accordance with the law.

21.     Almost two (2) years prior to being promoted to Chief, Hamilton, with Standefer's agreement, gave Plaintiff an evaluation for CID. He graded Plaintiff really low which was very surprising because Plaintiff was the best Detective back there, and Plaintiff maintained a ninety percent (90%) close rate on all of his cases combined. He did not want to promote Plaintiff at the time because that would have put Plaintiff just two (2) ranks underneath him. Standefer even concluded during the evaluation that if Plaintiff kept working as hard as Plaintiff did that he was going to end up putting everybody in the Police Department out of a job.

22.     Hamilton later told the Plaintiff that he runs CID, and he promotes in his department based on how he feels about the individual and not about the quality and quantity of the work that is performed.

23.     Plaintiff and Detective Joseph White went to then Chief Ollie Collins to inform him of such statements and that Captain Jerry Hamilton was creating a hostile work environment in violation of the law. Collins advised that he would look into it, but nothing was done.

24.     As a result, the following week Plaintiff and Detective Ronnie Williams were called into Hamilton's office. Hamilton demanded that Plaintiff no longer complain to Chief Collins, but Collins was an appropriate authority under the AWPA to make such complaints to.

25.     Hamilton demanded that Plaintiff and Detective Ronnie Williams were to come to him, and Tyler Standefer, only. Plaintiff refused because it was Defendants that Plaintiff had the issues with. Hamilton then slammed his hands on his desk and yelled that if Plaintiff had a problem with Standefer and Hamilton, Plaintiff must not to go back to Chief Collins to complain.

## Exhibit A

26.    About two (2) months before Plaintiff was terminated in April of 2022, Osceola City Councilman Joe Harris, announced that he was running for Mayor of Osceola.

27.    Plaintiff took the newspaper article and placed it on his door underneath his name plate.

28.    Plaintiff was very vocal about who he was supporting for the position of Mayor.

29.    Neither Standefer nor Hamilton liked Plaintiff's support for Harris. A month after his announcement, the current Mayor of Osceola, Sally Wilson, saw Plaintiff and Joe Harris eating lunch at a cafe in Wilson, Arkansas.

30.    The next day, Plaintiff was disciplined by Chief Hamilton about having lunch with an elected City Councilman who was running against the current Mayor in violation of ACA 21-1-503. He then went on to question Plaintiff about how long Plaintiff was eating lunch.

31.    Then, Tyler Standefer sent home Plaintiff's supervisor, Lieutenant Ronnie Williams, a black male, for insubordination. Plaintiff expressed his belief that this discipline was race discrimination. This was protected activity under the ACRA and the Equal Protection Clause.

32.    Approximately a week after that incident, an Affidavit attached to a report come across Plaintiff's desk, along with several other reports and Affidavits. This particular Affidavit was signed by the Assistant Principal, Brandi Hubbard, at the middle school in Osceola, who complained about Kandra Denkins.

33.    After reading the Affidavit and the report, Plaintiff made contact with the victim who advised Plaintiff that during the verbal altercation Kandra Denkins was asked to leave the premises several times and refused to leave.

34.    Upon receiving that information, Plaintiff added the charge criminal trespass, along with disorderly conduct. Plaintiff then advised his supervisor, Ronnie Williams, that he could not assign this report to Plaintiff because it would be a conflict of interest. He took the report and

**Exhibit A**

assigned it to another Detective. He took the Affidavit and placed it on his desk. The Affidavit stayed in his office for about a week.

35.     When Plaintiff contacted the principal, she demanded to press charges because Kandra Denkins had been very disrespectful and caused a scene in front of students and teachers.

36.     A few days later, Plaintiff took the Affidavit along with several other Affidavits to the City prosecutor for his approval, or denial, of the Affidavits.

37.     The Affidavit for Kandra Denkins was approved along with several other Affidavits. Plaintiff then took the Affidavits to the Circuit Court Judge, Catherine Dean.

38.     Judge Dean read and examined each Affidavit thoroughly and even wrote notes on a few of the Affidavits. Once the Affidavit was approved, a Warrant was issued.

39.     Plaintiff then advised his Supervisor that certain warrants had been approved and that Plaintiff knew the whereabouts of a couple of people who had Warrants.

40.     Because he knew that it might be a conflict of interest, Plaintiff's supervisor instructed a female detective with the company of a female patrol officer to go to the Osceola High School and serve the warrant on Kandra Denkins.

41.     Plaintiff was present at the school during the arrest of Kandra Denkins. She was then transported to the Osceola Police Department and booked in on those charges.

42.     Then, Plaintiff instructed the female detective to interview Kandra Denkins in an attempt to get a confession out of her on those charges as well the events that took place at the Middle School on the day the Affidavit was signed. After about five (5) minutes, Plaintiff walked into the interview room to take notes and then asked a few questions of his own.

43.     The next day Kandra Denkins came to the Osceola Police Department and filed a Complaint against Plaintiff because he was present while she was being arrested at the High

Page 6

**Exhibit A**

School. Ms. Denkins also stated Plaintiff's presence made her uncomfortable while she was being interviewed because of their previous relationship back in 2018.

44.    Assistant Chief, Tyler Standefer, conducted the IA investigation on Plaintiff in which he asked Plaintiff several questions about Kandra Denkins.

45.    Plaintiff advised Standefer that he was confused about the investigation seeing as how Denkins was arrested on Disorderly Conduct and Criminal Trespass and that fact had absolutely nothing to do with them being involved in a relationship 2-1/2 years prior to her committing this offense.

46.    During the integration he was making it seem as if Plaintiff had something personal against her. Plaintiff concluded that he acted within the scope of his job duties.

47.    So, Plaintiff once again asked what any of that had to do with Plaintiff and Denkins' previous relationship 2-1/2 years prior.

48.    A few days after the investigation was conducted, Plaintiff was called into Chief's office where he was informed by him that Tyler Standefer had recommended Plaintiff's termination because Plaintiff violated the Code of Ethics because Kandra Denkins and Plaintiff were involved in a relationship back in 2018.

49.    There were at least five (5) officers involved throughout the Denkins' arrest, but Plaintiff was the only officer terminated. These officers had not engaged in a protected activity.

### COUNT I RETALIATION

50.    Plaintiff realleges the foregoing as if more fully set out herein.

51.    Each Defendant has deprived Plaintiff of his clearly established right to freedom of speech, his right to support the political candidate of his choice, and right to petition for redress of grievances under the 1st Amendment and the Arkansas Constitution.

Page 7

## Exhibit A

52.    Defendants have retaliated against the Plaintiff for the exercise of rights protected under the Equal Protection Clause, First Amendment, the ACRA, ACA 21-1-503, and Article 22 of the Arkansas Constitution. So, Plaintiff brings this action against the Defendant in her official capacity for Declaratory and prospective injunctive relief, as allowed by 42 USC 1983 and the ACRA.

53.    As a result of Defendants' violation of Plaintiff's State and Federal constitutional rights, Plaintiff has suffered severe mental and emotional distress, lost wages, lost earning capacity, and incurred medicals expenses, both past and in the future.

54.    Defendants' actions have been so egregious so as to warrant the Imposition of punitive damages, as allowed by 42 USC 1983 and the Arkansas Civil Rights Act of 1993 against the Defendant in their individual capacity.

### COUNT II OVERTIME

55.    Plaintiff realleges the foregoing as if more fully set out herein. .

56.    Plaintiff was a nonexempt employee working as a police officer for the City of Osceola.

57.    Section 7(k) of the FLSA provides that employees engaged in fire protection or law enforcement may be paid overtime on a "work period" basis. A "work period" may be from 7 consecutive days to 28 consecutive days in length. For work periods of at least 7 but less than 28 days, overtime pay is required when the number of hours worked exceeds the number of hours that bears the same relationship to 212 (fire) or 171 (police) as the number of days in the work period bears to 28. As an example, law enforcement personnel must receive overtime after 86 hours worked during a 14-day work period.

**Exhibit A**

58.     Plaintiff worked far more time than 86 hours in a two (2) week period, but Defendants failed to pay him overtime.  So, Plaintiff complained.

59.     Each Defendant had the ability to hire and fire the Plaintiff, as well as set the terms and conditions of his employment, so each Defendant is an employer within the meaning of the FLSA and the AMWA.

60.     Plaintiff therefore seeks judgment for wages due him, as well as overtime.

## COUNT III RETALIATION

61.     Plaintiff realleges the foregoing as if more fully set out herein.

62.     Plaintiff was a public employee, who complained about the failure of the City to pay him and other police officers in compliance with the AMWA and the FLSA.

63.     Defendants terminated the Plaintiff in violation of the AWPA, the FLSA, and the AMWA.

64.     Defendants took the adverse action because Plaintiff communicated in good faith to an appropriate authority by a verbal or written report that a violation or suspected violation of a law, rule, or regulation adopted under the law of Arkansas and that the communication was made at a time and in a manner which gave the public employer reasonable notice of need to correct the waste or violation or Plaintiff participated or gave information in an investigation, hearing, court proceeding, legislative or other inquiry, or in any form of administrative review.

65.     Plaintiff's termination was the proximate cause of Plaintiff's lost wages and lost fringe benefits.

66.     Defendants' actions were willful.

## JURY DEMAND

67.     Plaintiff demands a trial by jury.

Page 9

# Exhibit A

**WHEREFORE,** Plaintiff prays for appropriate compensatory and punitive damages; for liquidated damages, for reasonable attorneys' fees; for costs; trial by jury; reinstatement or front pay, for Declaratory Judgment that Defendant has retaliated against the Plaintiff for exercising his state and federal Constitutional rights, for an Injunction requiring each Defendant to cease their retaliatory conduct, for an Order requiring the Defendant to remove all negative information from Plaintiff's employment file, for an Injunction requiring the Defendant to cease interfering with Plaintiff's efforts to find work, and, for all other proper relief.

Respectfully submitted,

Luther Oneal Sutter, Esq., ARBN 95031
Attorneys for Plaintiff
**SUTTER & GILLHAM, PLLC**
310 W. Conway Street
Benton, AR 72015
501/315-1910 – Office
501/315-1916 - Facsimile
Luther.sutterlaw@gmail.com

Page 10

## Exhibit A